# Phillips, *et al*, *v.* Bradford.

## *Bill to Cancel Mortgage.*

(Decided June 6th, 1906.    41 So. Rep. 657.)

1. *Pleading; Amendment of Bill; Departure.*—The bill, seeking cancellation of a mortgage, alleged that while complainant was being pressed by creditors., respondent, complainant's brother, in whom she reposed confidence, and who managed her business,

[Phillips, *et al*, v. Bradford.]

advised complainant to execute a bogus mortgage to him. By an amendment such allegation were stricken from the bill and superceded by sections which omitted all statements about complainant being pressed by claims, but alleged that respondent advised her, that to protect her rights in her land, and to preserve her homestead for herself and minor children, it was necessary for her to give him a mortgage. By other amendment, it is alleged that respondent unduly influenced complainant, and that it was not necessary for complainant to have given the mortgage to protect her rights in the land and to preserve her homestead. Held, the amendments were not departures from the original bill, as the amendments were consistent with and germain to the idea that the claims did exist. and that the giving of the mortgage was unnecessary, either because the claims could have been taken care of otherwise, or because complainant could have protectetd her homestead under the statute.

2. *Equity; Fraud of Complainant; Effect; Existence.*—The bill was not subject to demurrer on the grounds that complainant was guilty of fraud, or that the parties were in pari delicto.

APPEAL from Lee Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by Mary L. Bradford to cancel a note and mortgage executed by her to respondents testator for want of consideration, etc. From a decree overruling demurrers to the bill respondents appeal. The pleadings are sufficiently set out in the opinion of the court.

J. W. STROTHER and R. C. SMITH, for appellant.— The bill as last amended is clearly a departure from the original bill.—*Penn v. Spence,* 54 Ala. 35; *Marshall v. Olds,* 86 Ala. 296; *Mobile Savings Bank v. Burk,* 94 Ala. 129. The amendment is clearly inconsistent with and a departure from the original bill in that it seeks relief on a different state of facts from that set up in the original.—*Ward v. Patton,* 75 Ala. 202. Matters which could not be alleged in the alternative in the original bill cannot be introduced into the amended bill by way of amendment.—*Clark v. Lyde,* 90 Ala. 246; *Winston v. Mitchell,* 93 Ala. 554. The averments of undue influence are clearly insufficient.—*Jackson v. Rowell,* 87

Ala. 685. The bill showns on its face that the mortgage is made for the purpose of hindering, delaying or defrauding creditors of complainant, and it is therefore valid, inter parte.—*Glover v. Walker,* 107 Ala. 540.

GEORGE P. HARRISON, for appellee.—Court will watch with jealous care dealings between parties occupying fiduciary relations and relations in which dominion may be exercised by one person over another.—*Cannon v. Gilmer,* 135 Ala. 302; *Kyle v. Perdue,* 95 Ala. 585; *Ryan v Price,* 106 Ala. 584; *Shipman v. Furniss,* 69 Ala. 556; 2 Pomeroy, Sections 943-951-955 and 956.

SIMPSON, J.—The original bill in this case seeks the cancellation of a note and mortgage made by the complainant (appellee) to the testator of defendant (appellant). Section 3 of the original bill alleges that, "while orator was being pressed on some indebtedness," her brother, Thomas L. Cobb, "in whom she resposed confidence and trust, and who was accustomed to aid and assist her in the management of her business, suggested and advised your orator to execute a bogus or false mortgage to him," which he told her would protect her against claims and threatened suits. The fourth and fifth sections relate to the execution of the bogus mortgage, that there was really no consideration for it, and she owed her brother nothing. By subsequent amendments said sections 3, 4, and 5 were stricken from the bill, and substituted by sections which omitted all statements about the complainant being pressed with claims, etc., but alleged that her brother, who attended to all of her business, "advised her that, in order to protect her rights in said lot and to preserve the same as a homestead for her and her minor children, it was necessary for her to give him a mortgage on said lot, which he told her at the time would be a bogus or false mortgage, and this would completely protect her against any claim; that complainant was not only a widow, but unacquainted with business methods and wholly ignorant of her rights in the matter; that said Cobb was not only her

brother, but a man of intelligence and education, engaged in active business, and advised complainant in all important matters, and in whom at that time she had great confidence." It is then alleged that said brother induced her to execute the mortgage, which he had prepared, "to secure a pretended indebtedness," and that he paid her nothing, and that she was not indebted to him. The fourth section was again so amended so as to allege that said Cobb "unduly influenced" complainant to make the mortgage, and that it "was executed as the result of undue influence" by him. Then another amendment was made, by adding to said fourth section a statement that "it was not true that it was necessary for complainant to have given the mortgage in order to protect her right in said lot and preserve the same as a homestead, and that she did not voluntarily or of her own accord execute said mortgage, but was misled and deceived by the representations of the said Thomas L. Cobb, and thereby induced to execute said mortgage."

The first point raised by the demurrers, and insisted upon in argument by the appellant, is that the amendments are clearly inconsistent with the original bill and constitute a departure in pleading. We cannot see that there was such inconsistency as to constitute a departure. The purpose of the entire bill and amendments was to obtain a cancellation of the mortgage, and the general reason, running through all, why this relief is asked, is that it was improperly procured, without consideration by said Cobb. The relief prayed is the same. In fact, the first amendment, while it omits the statement that complainant was being pressed by claims, yet it carries with it the clear intimation that there were claims which were to be avoided, and the last amendment, while it alleges that it was not necessary to make the mortgage to save the homestead, does not allege that there were no claims to be avoided. The statements of the amendments are entirely consistent with the idea that the claims did in fact exist, but that the mortgage was not necessary, either because the debts could be otherwise provided for, or because the complainant

could have protected her homestead by the simple process of filing her claim as provided by section 2065 of the Code of 1896.—*Park v. Lide,* 90 Ala. 246, 252, 7 South. 805; *Winston v. Mitchell,* 93 Ala. 554, 560, 561, 9 South. 551; *Berry v. T. & C. R. R.,* 134 Ala. 618, 621, 622, 33 South. 8.

The next point raised is that the evident purpose of the mortgage which is sought to be cancelled was to hinder, delay, and defraud creditors, and that, the complainant and respondents' testator being in pari delicto, a court of equity will not exert its powers in favor of either party. This is a clear principle of equity, laid down by the text-writers and adhered to by our own and other courts.—*Glover v. Walker,* 107 Ala. 540, 18 South. 251. There seems to have been some modification of this rule, as suggested by counsel for appellee. It is stated that "when a stronger mind takes advantage of a weaker and by persuasion and influences procures the unlawful act, or when the parties stand in such a relation that undue influence will be presumed, the reason which denies relief ceases to be applicable. * * * If the superior should be allowed immunity under such circumstances, he would be permitted to take advantage of his own wrong, and therefore equity will not refuse aid to the inferior."—14 Am. & Eng. & Ency. Law (2d Ed.) p. 279. Mr. Pomeroy, also, notes several exceptions; one being when "both have not with the same knowledge, willingness, and wrongful intent engaged in the transaction;" also where "there are collateral and incidental circumstances attending the transaction, and affecting the relations of the two parties, which render one of them comparatively free from fault. Such circumstances are imposition, oppression, duress, threats, undue influence, taking advantage of necessities or of weakness, and the like as a means of inducing the party to enter into the agreement, or of procuring him to execute and perform it."—2 Pom. Eq. Jur. (3d Ed.) pp. 1717, 1718, § 942. Where a party to whom a deed was made to defraud creditors fraudulently had other lands than those intended to be conveyed included in the deed, relief was

granted.—*Clemmens v. Clemmens*, 28 Wis. 637, 9 Am. Rep. 520. This was based, however, on the fraudulent act of the defendant, not participated in by the plaintiff. Id., 9 Am. Rep. 532. Where a husband represented to his wife that she was liable for certain debts (which was false), and induced her to convey property to him for the purpose of avoiding the debts, the deed was canceled, on account of the confidential relations and because there was a mutual mistake as to the facts; the court remarking "that the parties did not stand on equal terms."—*Boyd v. De La Montagnie*, 73 N. Y. 498, 29 Am. Rep. 197, 199. Where a feeble old man, harassed by suits for alimony, etc., and whose wife had contracted considerable debts without his consent, was persuaded to convey his property to his nephew's wife as trustee, the conveyance was canceled. The court notes that it was "not found that B. made the conveyance to avoid the threatened suit."—*Nichols v. McCarty*, 53 Conn. 299, 23 Atl. 93, 55 Am. Rep. 105, 113. In another case an illiterate young man was induced by his uncle, by false representations in regard to suits against the estate from which the young man inherited property, to have a deed to the property which the young man was purchasing conveyed to the uncle, the young man was granted relief against the uncle, because, first, of the confidential relations, and the defendant should not be allowed to profit by his own wrong; and, second, the statements being untrue, "there were no creditors to be defrauded."—*Williams v. Collins*, (Iowa) 25 N. W. 682, 683. In another case, where a client made a deed absolute on its face to his lawyer to secure advances amounting to much less than the value of the property, the deed was declared to be a mortgage, and the court says: "One of the purposes may have been to prevent other creditors from reaching it. We do not think, however, that under the circumstances there should be an application of that rule of equity which denies relief to one party against another when both have been engaged in a fraudulent transaction. The parties were not in pari delicto. One was the legal adviser, the other the client. * * * Equity will not tolerate the idea that an attorney may

make use of his peculiar power over his client to procure a contract which is illegal and contrary to public policy, and to then invoke the aid of the law to enable him to retain that which he has obtained through his fraudulent artifices."—*Herrick v. Lynch,* (Ill.) 37 N. E. 221, 223. In our own court, relief was granted in a case where the facts were similar to those in this case; but the question of pari delicto does not seem to have been raised.—*Cannon v. Gilmer,* 135 Ala. 302, 33 South. 659. While these cases are not all strictly analogous to the one before us, yet we gather from them and from the eminent text-writers cited, that in a case like this two maxims of the law meet—one that where the parties are in pari delicto, no affirmative relief will be granted to one against the other; and the other that one party who occupies a confidential relation to another cannot profit by any conveyance to him, without showing entire freedom from undue influence and a bona fide transaction on sufficient consideration. We gather, then, that where these relations exist the fact that the instrument that the weaker party was induced to make may have been illegal does not necessarily place her in pari delicto with the stronger party, who dominated her for his own profit.

On the subject of undue influence, under our decisions it is not "necessary to allege with particularity the quo modo, * * * but only that it was accomplished by undue influence exerted by named persons."—*McLeod v. McLeod,* 137 Ala. 267, 270, 34 South. 228. Our decisions have also been very liberal to the weaker party in transactions of this character, holding that "the general principles which a court of equity applies to transactions between persons occupying fiduciary relations towards each other is not confined to cases in which there is any formal or technical fiduciary relation, such as guardian and ward, parent and child, attorney and client, etc., but extends to all cases in which confidence is reposed by one party in the other and the trust is accepted under circumstances which show that the confidence was founded on the intimate personal and business relations existing between the parties which gave the party an advantage or superiority; and in such case

the onus is on the party in whom the confidence is reposed to show that no fraud, undue influence, or other improper motives entered into the transaction."—*Kyle v. Perdue,* 95 Ala. 579, 585, 10 South. 103; *Ryan v. Price,* 106 Ala. 584, 17 South. 734. See, also, 2 Pom. Eq. Jur. (3d Ed.) pp. 1748, 1749, § 956 We desire, also, to call attention to another principle laid down by Mr. Pomeroy, who, in speaking of these cases where parties are in pari delicto, says: "The maxim, rightly interpreted, does not require the condition of the parties, with respect to the subsisting executory contract to remain unchanged and undisturbed. The remedy of cancellation * * * is simply the equitable proceeding identical with setting up the illegality as a defense to defeat a recovery at law, and thus get rid of the contract as a binding executory obligation."—2 Pom. Eq. Jur. (3d Ed.) p. 1714, § 940. According to the allegations of the bill, as amended, the confidential relations existed, and the undue influence was used, the necessity to make the mortgage to secure the homestead did not exist, according to the statement in the bill, and the statutes of Alabama, in place of branding as fraudulent the saving of the homestead for the use of the mother and children encourages the same and has made special provisions by which this widow might have kept her homestead intact, and still remained in Auburn to educate her children.—§ 2069, code 1896. We hold that this is not a case where the doctrine of pari delicto should prevent the reparation of the wrong, if the mortgage was an attempt to defeat the claims of creditors contrary to law, it could never be enforced, and there seems no good reason why it should remain as a cloud on the title, and the remedy by cancellation, as Mr. Pomeroy says, was just accomplishing the same and as defeating the enforcement of it; so that, in either aspect of the case, the demurrers to the bill were properly overruled.

The judgment of the court is affirmed.

WEAKLEY, C. J., and TYSON and ANDERSON, JJ., concur.