THOMAS CLANCY, Appellee, v. E. J. KELLY, Appellant.

TRIAL: Verdicts Contrary to Evidence—Champertous Contract—
1   Reasonable Value of Services. On the issues whether an attorney entered into a contract for services, whether, if he did enter into said contract, it was champertous, and, if it was champertous, what was the reasonable value of the services, a verdict finding the existence of the contract, but also finding a lesser sum due than called for by said contract, presents no inconsistency.

CONTRACTS: Legality of Object, Etc.—Divisible Contracts—Legal
2   and Illegal. If two distinct contracts. one legal and one illegal,

covering different, but related, subject-matters, are entered into between the same parties, it is legally impossible for the illegal to so taint the legal as to prevent the enforcement of the legal, howsoever closely the making of one contract may follow the making of the other. So held as to a non-champertous contract for legal services, and a contract to pay costs.

CHAMPERTY AND MAINTENANCE: Attorney and Client—
3  Agreement to Pay Costs. An agreement by an attorney personally to pay necessary court costs and witness fees, because of the financial inability of the client to pay them, is enforcible.

ATTORNEY AND CLIENT: Compensation—Contingent Contract—
4  Construction. A contract provision that an attorney is entitled to an enlarged compensation provided the cause is *"tried"* in the Supreme Court does not necessarily contemplate a trial *on the merits*.

*Appeal from Polk District Court.*—C. A. DUDLEY, Judge.

MARCH 5, 1918.

DEFENDANT and appellant claims that, by a contract between the parties, defendant is entitled to retain half of the proceeds of a judgment, as compensation for services in obtaining that judgment, and that, at all events, his services were reasonably worth a sum equal to half of said proceeds. Plaintiff claims the contract is void for champerty, and that the jury allowed the defendant to retain more than his services were worth. Defendant appeals.—*Reversed and remanded.*

*John McLennan*, for appellant.

*Joseph H. Jones* and *Morton E. Weldy*, for appellee.

SALINGER, J.—I. Plaintiff pleads and proves, and the jury found specially, that the compensation was fixed by contract. The general verdict of the jury allowed defendant less than the contract price. Appellant contends this entitled him to a judg-

1. TRIAL: verdicts contrary to evidence: champertous contract: reasonable value of services.

ment notwithstanding the verdict. The point is not well made, because there is no inconsistency between the pleadings and special finding and the general verdict. It is the reasonable interpretation of the verdict that the jury found that, though there was a contract, such contract was champertous, and that the services were worth what, and only what, the verdict allowed for them. The question we have is not inconsistency, but whether there was any evidence that the contract was champertous, a question which was raised by motion to direct verdict.

II. There is conflict over when a contract fixing the compensation for the services of defendant was made. It is not a material one. Be that as it may, the jury was authorized to find, and did find, that the agreement was made while plaintiff was in a hospital. It is said by both parties that they agreed Kelly should act as the attorney of plaintiff in a suit to recover for personal injuries suffered by plaintiff; that, if the case was settled before it went into court, the defendant should have one fourth of the proceeds; if it was tried in the district court, he should have one third; and if it was tried in the Supreme Court, he should have one half. There is no claim that such agreement is champertous, and it has long been settled in this state that it is not. *Winslow v. Waterloo St. R. Co.,* 71 Iowa 193, at 199. What plaintiff does claim is that the agreement to compensate for services included, as an indivisible part, an arrangement for the payment of costs, which is, in itself, unlawful, and which taints the otherwise lawful agreement to pay for services. The jury could find some agreement was made that defendant should pay costs. If that agreement is illegal, but divisible, its existence does not affect the right to recover on so much of the contract as is, in itself, lawful. See *Packard & Field v. Byrd,* 73 S. C. 1 (51 S. E. 678) ; *Vimont v. Chicago & N. W.*

2. CONTRACTS : legality of object, etc. : divisible contracts: legal and illegal.

*R. Co.*, 69 Iowa 296, at 303; *Grieve v. Illinois Cent. R. Co.*, 104 Iowa 659; *McVicker v. McKenzie*, 136 Cal. 656 (69 Pac. 495). The first question, then, is whether the two agreements are divisible. And that inquiry narrows to whether there is any conflict upon the point. Defendant says that nothing was said as to the payment of costs until long after Clancy had left the hospital, and after there had been a complete contract to pay for services. Is there any substantial dispute of this? Several witnesses depose that the agreement on costs was made while plaintiff was still in the hospital, and on the day on which the contract as to services was made. This does raise a conflict on whether the costs agreement was made at that time or at a later one, but none over whether it was or was not a part of the agreement to pay for services. These witnesses merely say that the costs agreement was made in the hospital, but not that both agreements were made at the same time; and what they say does not exclude that the understanding as to costs was arrived at after a complete contract had been made on payment for services. It is true the plaintiff testifies:

"Of course, we talked about witnesses before I got to the contract. I told him all the witnesses I had, and everything like that; and then we talked on general topics for a little while, and I asked him, 'What is this going to cost me in case we lose this suit?' and he answered, 'It won't cost you a cent; I will pay the costs of the court;' and I replied, 'All right, that looks better to me.' "

It is not impossible to strain this, standing alone, into a statement that the two agreements were made together, and that the two constitute the contract. But for reasons presently to be stated, this would be strained and untenable construction. It means that witnesses were talked about before contract to pay for services was reached; that then it was made; that then the parties "talked on general topics;" then plaintiff came to think about the costs; and thereupon,

an understanding as to costs was reached. This is so be-
cause: (a) Otherwise we would have plaintiff asserting the
literal reading of his said statement, which discloses *no*
contract except as to costs,—would have him claim that no
contract as to services was made; (b) so to construe said
statement is to disregard all the other evidence on the point.
The plaintiff himself testifies that their contract at the
hospital fixed a scale of compensation with reference to the
aforesaid contingencies, and he says, "That was our con-
tract: I had no other contract." He adds that, in the
"latter talk," defendant told him about the costs, and said:
"I will pay the costs of the court, will stand all the costs of
the court." There is not only this express statement as to
what contract was first made, but a number of witnesses tes-
tify as to what the contract was later described to be, and
that the description was always a statement that certain
percentages of the recovery were to be paid in certain con-
tingencies; and John B. Sullivan, whose testimony is not
denied, says that, when talking with Clancy about the
trouble between him and defendant, Clancy stated what the
arrangement was about compensation, and said nothing
about its including any dealings as to costs.

We conclude that, in strictness, divisibility is not in-
volved, but that the matter of costs is controlled by a con-
tract which is no part of the one as to pay for services.

III. We next inquire whether such
3. CHAMPERTY
AND MAIN-
TENANCE: at-
torney and
client: agree-
ment to pay
costs.
agreement as there was on paying costs is
enforceable.

Kelly's version is that, when he found,
after the agreement concerning compensa-
tion had been made, that Clancy was financially unable to
pay such witnesses as demanded their fees in advance, he
agreed to help Clancy out in this regard, and did so. A wit-
ness for plaintiff says that Clancy said corporations were
hard to beat; that he would have to meet the expense of it,

and he didn't see how he could do it; and Kelly answered he would meet the expense if Clancy lost, and would, in that event, pay the costs and expenses of court. Another witness speaks to a talk she overheard on the morning of the trial, in which Clancy asked Kelly how it was about the expense of this court in case they lost; to which Kelly replied, "I will pay the costs of court in case we lose, for we are not going to lose." Others say Kelly told Clancy not to worry about costs; that he (Kelly) would pay any there was to pay.

In determining whether a contract is champertous, the intention is the controlling thing; and there should be no strained interpretation, with the result that an immoral use is imputed. *Calkins v. Pease*, 125 Ill. App. 270.

"And while it is the duty of all courts to maintain, so far as possible, the purity and dignity of the profession, and to frown upon the illegal and immoral acts of any of its members, the brand of illegal and immoral action should not be recklessly applied without sufficient evidence to warrant the application." *Wallace v. Chicago, M. & St. P. R. Co.*, 112 Iowa 565, at 567, 568.

Guided by these rules of construction, it is not unreasonable to hold that all done, in effect, was that Kelly told Clancy that the latter need not worry about the costs; that he would win, and that, therefore, there would be no costs; and that this somewhat optimistic but not unnatural statement was backed up by an assurance that, if this guess was wrong, the guesser would pay the costs,— and all that was done is that, when Clancy found himself unable to pay fees demanded by witnesses, Kelly advanced them, and some other court costs.

It is true that, in some cases wherein the agreement included payment of the costs by the attorney out of his part of the recovery, we have held the agreement to be champertous. Such cases are well illustrated by *Boardman & Brown v. Thomson*, 25 Iowa 487; *Barthell v. Chicago, M. & St.*

*P. R. Co.*, 138 Iowa 688, 690. But it is pointed out in another of our decisions that, in the first-named class, the decision does not rest upon what agreement there was for the advancement of court costs, but upon other obnoxious elements, and that the agreement concerning costs is dealt with as a sort of makeweight. See *Boardman* case, 25 Iowa 487, at 505. And see *Wallace v. Chicago, M. & St. P. R. Co.*, 112 Iowa 565, at 568, distinguishing some of these cases. There is language in *Barngrover v. Pettigrew*, 128 Iowa 533, at 534, 535, which, standing alone, and without reference to what the record is, might bear against the position of the appellant. But it, too, is not a decision that any sort of an agreement to help a client in the payment of emergency costs will destroy the right to be reimbursed for such advances,—much less that such an arrangement will estop the right to recover under contract for the services rendered. And the member of the court who spoke for it in the *Barngrover* case also spoke for it in *Wallace v. Chicago, M. & St. P. R. Co.*, 112 Iowa 565, at 567. In the last named case, it was the agreement that Adams, administratrix, agreed with the attorneys "to pay them for their services as attorneys" one half the amount recovered by her, whether on final judgment or settlement, and it was further agreed they should be paid the money "heretofore or hereafter advanced by them, or either of them, if any, in the prosecution of said cause, together with all their personal expenses incurred in connection therewith." It is not denied the attorneys had made advancement in the way of paying the filing fees, for the attendance of witnesses, and for other necessary expenses incident to the preparation and trial of the case. The contract is sustained, and is said to be not within the rules announced in cases like *Boardman v. Thomson*, and it is further said:

"But this is not sufficient evidence of an illegal and immoral contract, for but few cases of any kind are handled

by the most exact and conscientious of the profession where they are not called upon to do many or all of the things complained of here, and where they do not hesitate to make advancements, without thought of wrong, and in most instances, without thought of how or when repayment will be made."

We have found no decision of this court which condemns an agreement to advance costs, such as was made here, where the agreement does not involve more than such a costs arrangement. The *Wallace* case holds what was done here to be lawful, and we hold there was no champerty.

IV.   Under the testimony for plaintiff,

4. ATTORNEY AND CLIENT: compensation: contingent contract: construction.

defendant is entitled to one half, provided the case was "tried" in the Supreme Court, and the judgment affirmed. An appeal was perfected. There was an affirmance. But plaintiff says that nothing beyond one third is due, because there was no contest on the "merits;" that all defendant did was: (a) He dealt with an application to have time for filing abstract extended; (b) when abstract was not filed within the time as extended, he took the proper steps to obtain, and so did obtain, an affirmance.

Of course, it was competent for the parties to agree that no addition should be made to the one third which was, on collection, due for obtaining judgment in the district court, unless an affirmance was obtained, after a full contest. But was that the agreement, merely because enlarged compensation was due only if the case was successfully "tried" in the appellate court? Does "tried" define the amount of "trying," and is a contest to the end an essential?

Both understood that the judgment in district court was of no avail unless the appeal was defeated. It must have been understood that, if an appeal was perfected, defendant should give it all proper attention at once, and before it could be known whether the appeal would ever be

tried "on the merits." On the theory of the plaintiff, defendant was to have nothing for any proper work he did in the appellate court, even if such work included a direct means by which affirmance was obtained, because he was not called upon to do more work. Where is the line to be drawn? On the theory of plaintiff, nothing was due defendant had appellant dismissed after having fully argued, and when defendant had the argument for appellee ready to serve. Suppose an agreement to pay a stated fee for trying a case for an appellee. Suppose an affirmance was obtained by having the argument for appellant stricken for not having been filed in time, or because it was so framed as that rules of presentation prohibited its being considered,—could it be said no payment was due because the counsel had *not* tried the appeal on behalf of appellee? On the theory of this plaintiff, defendant could get no more than half, no matter how much more work than was expected he had to do in the appellate court, but could get nothing for that work if that work was not as much as was expected, and less than it might have been had the appellant been more combative. We think the parties were not so much concerned with having a large amount of work done in this court as with obtaining an affirmance, and that "tried" was intended to mean doing what would make the judgment available, should its being available be interfered with by an appeal. Suppose Kelly had asked Clancy, when they were negotiating, how much work Kelly must do to obtain an affirmance, in order to obtain the enlarged compensation. Can we doubt Clancy would have answered, in effect, that he did not care how much or how little work was done to affirm the judgment, so long as it was clear that nothing was paid unless the same was affirmed? And the difference, some $300, is not so shocking an allowance for a retainer in the Supreme Court and for the work actually done there as that the size of the allowance compels a construction

that nothing was to be paid unless a stubborn contest to a finish was had. To say nothing of the other reasons, it seems to us to be decisive for defendant that, on his theory, he was entitled to nothing, no matter how much work he did, unless an affirmance was obtained; while it is that of plaintiff that nothing was due, though proper work was done and an affirmance was thereby obtained.

We are of the opinion that the judgment below must be reversed. The cause is remanded, with direction that the district court enter judgment for plaintiff's costs in both courts to be paid by plaintiff, and otherwise in accordance with this opinion.—*Reversed and remanded.*

PRESTON, C. J., LADD and EVANS, JJ., concur.