W. C. BRYANT et al., Appellees, v. O. S. MUNDORF et al., Appellants.

ATTORNEY AND CLIENT: Compensation—Trial of Cross-Bill as 1 ''Defense.'' An attorney who contracts to "defend" a defendant in divorce proceeding, and to receive a named sum in case of "trial," and a lesser sum in case of settlement "out of court," and who later files a cross-bill for divorce on defendant's behalf, is, in view of the evident intent of the parties, as reflected in the contract and circumstances, held entitled to recover the larger sum, when plaintiff in the divorce proceedings voluntarily dismissed her action, and the cause proceeded to trial on the cross-bill, with divorce decree for defendant.

PLEADING: ''Cross-Bill'' as ''Defense.'' The filing in divorce 2 proceedings of a cross-bill on behalf of a client, and the trial of the same, may constitute a *"defense"* of the client, within the meaning of a contract relative to fees for "defending" the client.

ATTORNEY AND CLIENT: Contract Compensation if Action Set- 3 tled ''Out of Court.'' An agreement by an attorney with a defendant in divorce proceedings to accept for his services a named sum, in case of settlement "out of court," has no application to a case where defendant filed a cross-bill for divorce, whereupon plaintiff dismissed, and the cross-bill went to successful trial for defendant.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

OCTOBER 2, 1920.

To the claim of the plaintiffs that a stated balance was due them for having given services as attorneys under

written contract, various defenses were interposed. The plaintiffs had judgment, as prayed, and defendants appeal. —*Affirmed*.

*Tinley, Mitchell, Pryor & Ross,* for appellants.

*W. C. & T. J. Bryant, C. B. Clovis,* and *F. A. Turner,* for appellees.

SALINGER, J.—I. Under the terms of the contract as written, as much as the trial court allowed ($600) was to be paid, "when trial [of a suit for divorce instituted by the then wife of O. S. Mundorf] is completed." The attorneys are to negotiate a settlement of that suit on his behalf if O. S. Mundorf suggests or orders it, and approves of it, and in case of settlement of that suit "out of court," $300 is all that is to be paid.

1. ATTORNEY AND CLIENT: compensation: trial of cross-bill as "defense."

G. L. Mundorf guaranteed in writing "the payment of the $600 fee provided to be paid in the above contract * * * also the $300 fee." One defense on part of guarantor is that, "because of accident and mistake, the guaranty is unintelligible; and that, through accident and mistake, there was omitted therefrom the statement that the fee was to be $300 if the case was not tried, but disposed of otherwise than by a trial." This defense needs no consideration, beyond pointing out the fact that there is no evidence of accident or mistake.

II. The contract provides that the plaintiffs "are to act as attorneys" in a named and pending divorce suit, brought by the then wife of defendant, O. S. Mundorf. They are to "defend" Mundorf "in said action." They are "to try said cause for defendant" in the named suit and in court where it was pending, and to do this "to the best of their ability, regardless of the length of said trial." They agree to defend "said case" for said defendant diligently; to consult witnesses; investigate testimony; to "de-

fend against the allowance of temporary alimony or other
alimony; take depositions, if necessary; and to prepare all
papers, pleadings, and filings necessary and proper to be
drawn, prepared, or filed in said above-entitled cause or in
connection therewith." They agree further "to negotiate
for the settlement of said case," if ordered to do so, "and to
conduct said settlement on behalf of said first party, and
to prepare all necessary papers thereunto pertaining." But
no settlement "shall be made or suggested, unless defendant
orders and approves it."

The suit of the wife was dismissed by her without preju-
dice. The plaintiffs filed cross-bill, and obtained divorce
for Mundorf on default. The defendants have paid $300,
and contend that is all that the contract obligated them to
pay. Their theory is this: (a) The $600 is due only if
there is a "trial;" (b) the suit brought by the wife was, of
course, not tried, because she dismissed it; (c) the contract
is limited to mere resistance of the suit, and does not con-
template the filing of cross-petition; and (d), waiving that,
there was no trial on the cross-petition, because the wife
made default.

After all, here is a mere question of intention. Was it
intended that nothing should be done that was not strictly
"defensive," and that the large fee should be paid only in
event that the defense involved a contested "trial?" In
solving this question, we consider the circumstances at-
tendant upon the making of the contract.

Before the wife of G. L. Mundorf instituted her divorce
suit against him, she left him, and took one of the minor
children with her. In her suit, she charged Mundorf with
cruel and inhuman treatment, adultery, and drunkenness.
She asked alimony in $10,000, and attachment and the cus-
tody of one of the minor children. Despite all this, at the
time the contract was entered into, the husband desired
reconciliation. But surely, we may assume that, though
that was his desire, he certainly was not willing to be found
guilty on the charges made in the divorce petition, nor to
yield voluntarily what was prayed therein. It surely was

intended that, if a reconciliation was not obtainable, the suit should be resisted. For Mundorf obtained contract that plaintiffs were "to defend first party in said action, and to try said case for defendant, and to defend against allowance of alimony, temporary or other, and to prepare all pleadings necessary or proper to be drawn, prepared, or filed in said cause or in connection therewith." It is conceded reconciliation became out of the question, and, if plaintiffs had resisted the suit by engaging in a trial, it would be conceded that the contract gave them what the trial court did. But they could not engage in trial of a defense in that particular suit, because the wife dismissed that suit. Now, was it intended that, if no contest was or could be had in the suit of the wife, the contract obligation to pay $600 on the one hand and the agreement "to defend" on the other was dead? Is it not more reasonable to say that the husband was more concerned with having his family troubles adjusted finally, and as well as it might be done, than he was over whether there was a naked defense to the suit of the wife, or some other proceeding that would as well or better accomplish the major object? Is it not the reasonable construction that he wanted done what would be best under conditions foreseen or any unforeseen that might develop? The answer was filed in March, 1915. Later, and in the trial of another cause, evidence was discovered which seemed to justify divorcing the wife for adultery. Based on this, the plaintiffs filed a cross-petition, on April 30, 1915. The discovery was communicated to counsel for the wife, and it became reasonably probable that she would dismiss. With no cross-petition, the dismissal would leave the trouble as it was; the wife would keep the minor child she had taken; she would retain her status of wife, and could at any time rebring her suit. Now, what would success on the cross-petition accomplish? The obligation of husband would end. The adultery of the wife would give the husband the custody of the children, and, if alimony were granted the wife at all, it would be nominal. What was intended, if such conditions should arise? Suppose, when

the contract was made, it had been suggested that, by possibility, such a situation might come to exist. Would defendant have said that, in that event, the attorney should do nothing affirmative, and, if there was a dismissal, should take his compensation out of scaling the fee to $300? We think he would have said, instead, that, in the suggested possible case, the attorneys should do what would be calculated to obtain as much as purely resistive defense would. It seems clear to us there would have been bitter complaint if a dismissal had put the adjustment of the husband's marital trouble out of court. On the whole, we are persuaded that, on the reasoning of *Clancy v. Kelly,* 182 Iowa 1207, it was intended that any action should be taken that would deny the wife a divorce, or settle that she should have neither alimony nor custody of the children. To be sure, it was not known, when the contract was made, that she was an adulteress, but none the less, all possibilities and needs for action could not be foreseen, and we think it may fairly be said the intention was to take such action·as facts subsequently discovered would justify. The plaintiffs were to "consult witnesses and investigate testimony;" to take necessary depositions; to prepare and file proper and necessary pleadings, not only in the suit of the wife, "but in connection therewith;" and to defend against the allowance of alimony in any form,—and they were to defend "diligently." Surely, it was intended that these described activities should effect what would do the most for the client.

III.    If defense had been made by answer only, and strictly as a defensive proceeding, the amount allowed the plaintiffs was, of course, proper. Was not the cross-bill the equivalent of "defending?" Is it not included in an agreement "to defend?" If it is, then the larger sum to be paid for "defending" was due. "Defense" has been defined to be, "The denial of the truth or validity of the plaintiff's complaint, which is extended and maintained by the defendant in his plea." And it has been said that:

2. PLEADING: "cross-bill" as "defense."

"Although the term 'defense,' in its strictly technical

sense, does not include a justification, but applies only to the denial of the complaint, in common parlance the word is used as applicable to any facts which defeat the action wholly or partially." 9 Amer. & Eng. Encyc. (2d Ed.) 175, 176.

We held in *Lindsay, Salinger & Co. v. Carpenter,* 90 Iowa 529, that, while a counterclaim is not, in strictness, a defense, an agreement to defend for a sum certain, includes service on a counterclaim presented in the case. It is said:

"The agreement to defend the case was certainly not understood to be limited to presenting defensive facts alone, but whatever might be properly presented on behalf of the client."

Under Paragraph 5 of Code Section 3566, the answer may contain a statement of any new matter constituting a counterclaim. As· to the statute requirement that, if the pleading of one be verified, subsequent pleading by the other must be, we have held that an answer, though it contains a counterclaim, is such subsequent pleading. *Yarger v. Chicago, M. & St. P. R. Co.,* 78 Iowa 650. And a counterclaim is an answer. *Town v. Bringolf,* 47 Iowa 133. Both the suit by the wife and the cross-action deal with a settlement of the same contractual relation, and for that reason, too, the last is "a defense," in the eyes of the law. On that reasoning, we held, in *Wilson v. Wilson,* 40 Iowa 230, that, in an action for divorce, defendant may set up any matter connected with the subject of the action and occurring after its commencement and constituting a cause of action against plaintiff upon which affirmative relief may be asked, and that such matters constitute a counterclaim. By analogy, this is supported by *Foster & Co. v. Ellsworth,* 71 Iowa 262. There, the original suit was to cancel a tax deed executed to the grantor of the defendant. Plaintiffs, having failed to show that they or their grantors had title at the time of the tax sale, dismissed their petition. It is held that, notwithstanding the dismissal, defendant had the

right to proceed with the trial of the cause made by a cross-bill asking that title be quieted in defendant; and he was allowed to prevail, because the court could not consider any evidence of the invalidity of the tax deed where the attacker had dismissed his case, and therefore had not shown that he was the holder of the patent title.

We conclude the cross-bill was within the contract "to defend."

IV. But, if the suit of the wife was "settled out of court," the allowance below was more than the contract justified. Was there such settlement? Surely, the suit by the wife was not "settled." In effect, she elected to dismiss, because her counsel were unwilling to risk a trial, after being advised of what evidence of her adultery it was claimed had been found. Nor was the marital trouble "settled;" for the cross-bill was proved up, and a divorce got by the husband. Nothing was compromised or abandoned by mutual consent. As well remarked in the opinion filed by the trial judge:

3. ATTORNEY AND CLIENT: contract compensation if action settled "out of court."

"A settlement cannot be made by one party. There must be assent of the other. It imports a meeting of the minds of two contenders. The term 'settlement,' when applied to a lawsuit, means payment, or accord and satisfaction, or something equivalent to accord and satisfaction. 'I have settled the matter' means it has been brought to a conclusion. 7 Words & Phrases, page 6449."

The contract relieved from payment if there was a settlement either suggested or ordered by the husband or approved by him. There was no such or any other settlement. What occurred was action that forced the wife to dismiss, and a pressing the divorce question to an end on cross-bill.

V. It may be granted the larger fee was not due unless there was a "trial." True, there was none in the dismissed suit.

Was there a "trial," within the contemplation of the contract? As to the cross-bill, there was. The fact that the defendant in the cross-bill defaulted, does not change

this. An issue was made in pleadings, submitted to the court, with evidence in its support, and decree obtained. See *Clancy v. Kelly*, 182 Iowa 1207.

"In a general sense, the term 'trial' means an investigation and decision of the matters in issue between opposing parties before a competent tribunal." 28 Am. & Eng. Encyc. (2d Ed.) 636, and cases cited.

VI. There is no merit in the claim that there was a settlement between the parties to this suit by the payment of the $300 received prior to proving up the cross-petition. It was not a settlement in full. There is no satisfactory evidence that plaintiffs said it was such settlement. The evidence fairly indicates the plaintiffs intended no such settlement.—*Affirmed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.