# Carlisle *v.* May.

*Bill in Equity by Creditor having Execution from Probate Court to redeem Lands conveyed by Mortgage.*

1. *Lien of execution issued from probate court; when lost.*—While, under the statute, six months may be permitted to elapse between the issue and return of an execution from the probate court, a new execution must be issued before the lapse of the regular monthly term next succeeding the return term, or the lien of the execution will be lost.

2. *Same.*—Where an execution issued from the probate court, returnable on the second Monday in December, 1882, was in the hands of the sheriff at the time of the death of the defendant in execution, in September, 1882, but no other execution was issued until 21st April, 1883, four entire terms of the probate court having been thus allowed to elapse without the issue of an execution, this operated a loss of the lien.

APPEAL from City Court of Selma.

Heard before Hon. JNO. HARALSON.

Bill in equity by Robert C. Carlisle and others, heirs at law of Robert Carlisle, deceased, against Moody H. May, Alfred Gardner, as the administrator of the estate of Andrew H. Gardner, deceased, and the widow and children of said decedent, and against Mary Ford; and the case made thereby is briefly as follows: In 1868, Robert Carlisle departed this life, intestate, in Dallas county, in this State, and, after an administration in chief, Moody H. May was, on 22d November, 1871, appointed administrator *de bonis non* of the estate of said decedent, and qualified as such by giving bond, and entered upon the discharge of the duties of said trust. In 1875, in obedience to an order duly entered by the probate court, said May

executed an additional bond, as such administrator, with the said Andrew H. Gardner as one of his sureties. On 14th April, 1879, a final settlement of the administration of said May upon said estate was had in the probate court, when decrees were rendered against him in favor of the heirs of said Robert Carlisle, the complainants, each for the sum of $1167.44, which have not been paid. Executions issued on said decrees against said May having been returned "no property found," executions were, on 22d October, 1879, issued against him and the sureties on his administration bond, including the said Andrew H. Gardner, and from time to time thereafter until 23d August, 1882, when an execution was issued against them on each of the decrees, returnable to the second Monday in December, 1882. On 29th September, 1882, Andrew H. Gardner departed this life, intestate, leaving a widow and minor children, who are made parties defendant to the bill, and thereafter the said Alfred Gardner was appointed administrator of his estate. After his death, on 21st April, 1883, executions were again issued on said decrees, returnable on second Monday in September, 1883, which were in the hands of the sheriff, and not levied, at the time the bill was filed. On 3d June, 1875, the said Andrew H. Gardner executed to the said Moody H. May, as trustee for the said Mary Ford, a mortgage on certain lands belonging to him, and situate in Dallas county, to secure a debt due on 1st October, 1875. It is averred that nearly all of this debt has been paid, and an offer is made to pay the balance. The bill contains other averments as to this mortgage, as to uncertainty of description of lands conveyed, and their identity with lands owned by said Gardner, which are not necessary to this report. The principal prayer of the bill is, that a discovery be had of the balance due on the debt secured by said mortgage, and that the complainants be allowed to redeem.

A demurrer was interposed by the defendants Ford and May, on the ground, in substance, that the complainants, at the time of filing their bill, as appears from its averments, had no lien on the lands sought to be redeemed; and, on a submission thereon, a decree was entered sustaining it. That decree is here assigned as error.

WHITE & WHITE, for appellants.

H. S. D. MALLORY and E. W. PETTUS, contra.

SOMERVILLE, J.—The question raised by the action of the court, sustaining the demurrer to the bill, is embraced in the inquiry, as to what constitutes "the lapse of an entire

term," in the case of executions issued on judgments or decrees of the probate court, within the meaning of section 3210 of the present Code (1876).

It is provided by the latter section, that an execution is a lien, in the county within which it is received by the officer, on the lands and personal property of the defendant, subject to levy and sale, from the time when the writ comes into the hands of the sheriff, and continues only so long as it is "regularly issued and delivered to the sheriff *without the lapse of an entire term.*"—Code 1876, § 3210.

So, it is also provided that a writ of execution, which has been "issued and received by the sheriff during the life of the defendant, may be levied after his decease, or an *alias* issued and levied, if there has not been the *lapse of an entire term*, so as to destroy the lien originally created."—Code, 1876, § 3213.

The regular terms of the probate court are fixed by statute, and are required to be "held at the court-house of each county, on the second Monday in each month."—Code, 1876, § 701. All executions and other process, issuing from the court of probate, may be made returnable, if no other day is provided by law, to any regular term of such court, "not less than three nor more than six months after such issue," or to any special term within the same period.—Code, 1876, § 710.

It is contended that the phrase "entire term," as applicable to probate courts, must be construed to mean not more than *six months* after the last or preceding execution was made returnable. We are unable thus to construe the statutes on this subject, when all taken together, as importing such a meaning. An entire term means simply "from one session of the court to another"—the period of time intermediate between two regular terms as fixed by law.—*Gamble v. Fowler*, 58 Ala. 576. The plain purpose of the statute is to exact diligence and prevent *laches* on the part of execution creditors. The liens of their executions can only be kept alive on condition that they are regularly issued in the manner and at the times, or intervals prescribed by statute. While as much as six months may be permitted to elapse between *the issue* and *the return* of an execution from the probate court, yet, after the advent of the return term, a new occasion arises for the repetition of due diligence. The execution must again go into the sheriff's hands without allowing an "entire term" to elapse—that is, the entire interval between two regular monthly terms, such as are fixed by law. The policy of the law is to require executions to be practically in the hands of the sheriffs until they are satisfied.

The defendant in execution, Gardner, is shown to have died on the 29th day of September, 1882, when the execution was

[Averett & Griffin v. Milner & Wilson.]

in the sheriff's hands. There was then a lapse extending from the second Monday in December, 1882, to the 21st of April, 1883, being a period of more than four months. Four entire terms of the probate court were thus allowed to elapse without the issue of any execution. This operated, in our judgment, as a loss of the lien.—Code, 1876, § 3213.

The conclusion, thus arrived at, is the only one which we can reach upon any sound principle of construction. The case seems to be a *casus omissus* in the law, possibly needing legislative attention. The analogies sought to be drawn from the orphan's court, and executions formerly authorized to be issued from it, do not, in our opinion, affect the construction which we have above adopted.

The demurrer to the bill was properly sustained, and the decree of the city court is affirmed.