(89 South. 39)

## McCORD v. BRIDGES et al.    (7 Div. 128.)

(Supreme Court of Alabama. April 7, 1921. Rehearing Denied May 12, 1921.)

Specific performance &#9901;89 — **Unconscientious conduct on complainant's part bars enforcement.**

. A contract perfectly valid and binding at law, and of a class which brings it within the equitable jurisdiction because the legal remedy is inadequate, will not be specifically enforced in equity where the complaining party has been guilty of overreaching and unconscientious conduct.

Appeal from Circuit Court, Talladega County; A. P. Agee, Judge.

Bill by Z. D. McCord against J. U. Bridges and another, in the nature of specific performance to enjoin the cutting of timber and other relief. From decree for respondents, complainant appeals. Affirmed.

McCord purchased certain lands which are specifically described in the bill, with certain rights of way, etc., and alleges that said lands were valuable lands principally for the hard wood and pine timber thereon, and entered into a contract with Bridges which will be hereinafter set out, and that Bridges contracted in some way with the other respondent in this case to log the mill for Bridges. The following is the contract:

"Know all men by these presents that this contract executed in duplicate by and between J. U. Bridges hereafter referred to as mill man, and Z. D. McCord, hereafter referred to as purchaser, witnesseth:

"First. Mill man contemplates purchasing certain timber, or timber and lands, erecting a sawmill plant on said timber lands, located near Trammell's, on the Central of Georga Railway Company's road, and to do so it is necessary to obtain financial assistance, and purchaser, being willing to advance financial assistance on good valid security, and for the further consideration hereafter set out, agrees to advance to mill man the sum of approximately six thousand dollars to buy timber and assist in buying machinery to equip sawmill for mill man to cut timbers on lands hereafter described.

"Second. [Here follows description of the lands.] The. said McCord has advanced the money to pay for the same, and mill man has deed made thereto to the said Z. D. McCord, and should mill man carry out all the terms of this contract, paying for all money advanced, then the said Z. D. McCord is to make deed back to mill man to said lands. It is further understood and agreed and is part of the consideration of this contract that T. S. Bridges, son of the mill man, agrees to execute and deliver to purchaser a mortgage on one house and lot, known as the Walker house, occupied by Dr. J. C. Griffin and family, to further secure said indebtedness of mill man to purchaser.

"Third. Mill man is to commence sawing the timbers on said land as soon as possible, and mill man is to cut all of said timbers on the orders of purchaser, and to stack and load the same f. o. b. cars at Trammell's, on Central of Georgia Railway Company line, under the instructions of purchaser, and purchaser to handle the lumber for mill man, and mill man is to have and receive one-half the proceeds of the sale of all lumbers cut for operating expenses of said mill, including cutting, hauling, sawing, stacking, and loading, and deliver the same to him as soon as possible thereafter to further the sale and disposition of the lumber. Mill man is to guarantee the grade and count of all lumber and timber shipped at point of destination, and to bear the loss of same in event lumber or timber fails to come up to specifications of all orders. Mill man is to use all possible diligence in operating his mill and cutting of the timber to the best advantage, and to keep the mill going all the time so as to operate the same to the best advantage to both mill man and . purchaser. Purchaser on his part agrees to sell all lumber or timber to best advantage, and to pay mill man for operating expenses sum equal to one half the amount realized from the sale of the lumber or timber, and the other half to be applied to the liquidation of mill man's indebtedness with purchaser. Mill man agrees to pay purchaser for his services in handling and selling said lumbers and timbers 5 per cent. of the gross amount received from all sales of lumber and timber; and this shall continue until the entire timber is cut and sold on the lands described above. notwithstanding the entire indebtedness may have been paid purchaser, and also notwithstanding the fact that some one else might pay off the indebtedness of mill man to purchaser, and contract for the handling of the output of the mill of mill man. Mill man contracts and covenants that he will make and deliver to purchaser a good and valid mortgage on all the sawmill, engine, boiler, feeder, and all other equipment and fixtures of the mill so located, and same to be free of incumbrances. This is to be done as soon as mill is placed on the premises described above, same to be given as additional and further security of indebtedness to purchaser.

"Fourth. It is mutually agreed and understood that should mill man fail to carry out any part of his contract that the entire contract may be declared forfeited by purchaser at his option, and proceed to take charge of or dispose of the property mortgaged, the mill included, and take over the same and operate the mill himself, or contract with others to do so.

"Witness our hands and seals in duplicate on this the 15th day of April, 1920.

    "J. U. Bridges, Mill Man. [L. S.]
    "Z. D. McCord, Purchaser. [L. S.]
"Attest: John A. Darden.
"Filed August 4, 1920."

The answer disclosed, and the proof shows, that McCord had taken three orders, one at $33, one at $32, and the other at $30 per thousand, and had transmitted them to Bridges as of $30 per thousand each. The evidence was in conflict as to whether or

not Bridges had received credit for the orders at the price paid McCord or $30 per thousand; the trial finding with Bridges' contention in the matter.

James W. Strother, of Dadeville, for appellant.

In order to justify the application of the principle of "unclean hands," the party complaining thereof must have been injured thereby. 90 Conn. 399, 97 Atl. 312, L. R. A. 1916E, 643; 164 Ill. 224, 45 N. E. 430, 35 L. R. A. 281; 109 Ky. 595, 60 S. W. 388; 195 Mass. 205, 80 N. E. 817, 11 L. R. A. (N. S.) 201, 122 Am. St. Rep. 232, 11 Ann. Cas. 332; 223 Fed. 247, 138 C. C. A. 489; 132 Md. 218, 103 Atl. 463; 85 Wash. 482, 148 Pac. 589; 21 C. J. 187, and cases cited. The rule in Alabama is stated in the following cases: 113 Ala. 276, 21 South. 213; 92 Ala. 497, 9 South. 83. Counsel discuss other features of the appeal, but in view of the opinion it is not deemed necessary to here set them out.

Riddle & Riddle, of Talladega, for appellees.

The court properly held that complainant was not entitled to relief, because he had not dealt fairly with respondent. 147 Ala. 550, 41 South. 842; 162 Ala. 496, 50 South. 127; 188 Ala. 641, 65 South. 951; 147 Ala. 377, 41 South. 816.

SAYRE, J. The parties to this cause in April, 1920, entered into the contract shown in the statement of facts. In respect of its origin this contract is in no wise impeached. Complainant, appellant, in pursuance of his obligation thereunder, advanced a large sum of money, taking title to the land in himself as provided by the contract. A sawmill was set up on the land and put into operation. In August following complainant filed his bill, averring, to state its effect sufficiently for the purpose in hand, that defendant was largely indebted to him on account of the contract; that he was cutting timber on the order of persons other than complainant, leaving complainant's orders unfulfilled; that he was negligently destroying much timber and greatly impairing the value of the land by cutting the timber in a negligent manner and allowing it to rot upon the ground; that he fraudulently misrepresented to complainant the amount of timber cut; that he was not exercising diligence in operating the mill; that complainant had declared a forfeiture under the terms of the contract and had demanded possession, but that defendant continued to cut timber, and was making arrangements to ship the same, in utter disregard of complainant's rights; that defendant was insolvent, and complainant would have no adequate remedy if the timber was cut and removed from the land. The prayer was that defendant be enjoined from cutting the timber, from shipping the timber already cut, and for general relief.

Answering, defendant denied any violation of the contract, and averred that defendant had failed to exercise diligence to procure orders for lumber and had fraudulently reported to defendant orders as taken for lumber at a price less than the price for which he sold it, thus defrauding defendant of the difference.

Evidence was taken orally before the court as provided by the act of September 22, 1915 (Acts 1915, p. 705), and upon the final hearing, on pleading and proof, the court dissolved the temporary injunction, which had issued in accordance with the prayer of the bill, and dismissed the bill; this upon the ground that complainant had practiced a fraud upon defendant in the matter of two orders as averred in the answer, and had no standing in court for the reason that he who comes into equity must come with clean hands. Having reached this conclusion, the trial court declined to inquire whether the averments of complainant's bill had been sustained in the evidence.

Due attention to the evidence touching upon that subject has led us to conclude, in agreement with the trial court, that complainant's explanation fails to satisfactorily account for the difference between the price at which complainant sold two shipments of lumber and the price at which defendant's interest in these sales was credited to him. We feel constrained to believe that this difference was the result of an effort to overreach defendant. Further, we find, as did the trial court, that pending the trial of this cause and after the discrepancy stated above had been developed by counsel for defendant, complainant's book entries were changed in an effort to cover it up and keep it from the court. This was a fraud upon the court. The trial court has stated all the circumstances, and we find no need for repetition.

Complainant's bill is in the nature of a bill for the specific performance of the contract between the parties—at least it seeks security and protection for certain rights for which complainant had stipulated. The contract and complainant's conduct in the execution of it in a matter wherein he acted as the confidential agent of defendant brings complainant and his bill within the influence of the principle stated by Mr. Pomeroy in this language:

"A contract may be perfectly valid and binding at law; it may be of a class which brings it within the equitable jurisdiction, because the legal remedy is inadequate; but, if the plaintiff's conduct in obtaining it, or in acting under it, has been unconscientious, inequitable, or characterized by bad faith, a court of equity

will refuse him the remedy of specific performance." 1 Pom. Eq. Jur. § 400.

And thus in conclusion of the whole subject:

"It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose very foundation is good conscience." Section 404.

The decisions of this court have established here the same policy. Harton v. Little, 188 Ala. 640, 65 South. 951; Ashe-Carson Co. v. Bonifay, 147 Ala. 376, 41 South. 816. Some limitations on the application of the doctrine are stated in Phillips v. Bradford, 147 Ala. 346, 41 South. 657, but they do not affect this case.

The decree must be affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.