(93 South. 841)

HARRIS v. HARRIS et al.    (8 Div. 466.)

(Supreme Court of Alabama.   June 22, 1922.)

1. **Equity ⚖️65(3)—Maxim that he who comes into equity must come with clean hands does not affect plaintiff's rights as to matters not affected by his wrongful act.**

The maxim, "He who comes into equity must come with clean hands," does not repel all sinners from courts of equity, nor apply to every unconscientious act or equitable conduct on the part of the complainant, and does not affect his rights and remedies as to matters not affected by the wrongful act.

2. **Equity ⚖️65(2)—Maxim that he who comes into equity must come with clean hands held not to preclude cancellation of judgment procured pursuant to fraud.**

Where one of decedent's heirs, who was named as a devisee and as the executor in the will, agreed to abandon his proceeding to probate the will contested, on the ground that decedent was of unsound mind, on statements of other heirs that probate of will would affect outcome of pending suit to cancel conveyances by decedent on the ground of mental incapacity, and that, as one of the heirs, he would receive a bigger portion of the estate under laws of intestacy if such conveyances were set aside than he would receive under the will, but the probate proceedings were thereafter prosecuted by other devisees, who, pursuant to agreement with the heirs, fraudulenty procured decree, in absence of person so named as executor, denying probate on the ground of the undue influence of such person, the abandonment by such person of probate proceedings did not preclude the court from setting aside such judgment of the probate court because of fraud, in a suit therefor by such person, on the ground that he did not come into court with clean hands.

3. **Estoppel ⚖️79—Agreement to appointment of contestant as administrator without knowledge of fraud in procuring judgment of probate court denying probate held not to estop devisee from seeking cancellation of judgment on the ground of such fraud.**

A devisee named as executor was not estopped from seeking cancellation of judgment of probate court denying probate of will on the ground that it was procured by fraudulent agreement between proponents and contestants by agreement to the appointment of contestant as administrator without knowledge of such fraud, since knowledge is an essential of estoppel.

4. **Wills ⚖️355—Devisee not precluded from seeking cancellation of judgment of probate court procured pursuant to fraudulent agreement, by failure to avail himself of remedy under four months' statute.**

A devisee was not precluded from seeking cancellation of judgment of probate court denying probate of will, on the ground that it was procured pursuant to fraudulent agreement between proponents and contestants, by failure to avail himself of his remedy under the four months' statute, Code 1907, § 5372, since such remedy is cumulative and concurrent, and not exclusive of equity jurisdiction.

Appeal from Circuit Court, Lawrence County; Robert C. Brickell, Judge.

Bill by R. N. Harris against R. N. Harris, Jr., and others to set aside a judgment of the probate court. From a decree sustaining demurrer to the bill, complainant appeals. Reversed and remanded.

The bill alleges that Mary H. Sherrod, a sister of complainant, R. N. Harris, and an aunt of defendant, R. N. Harris, Jr., died in March, 1920, leaving a last will and testament in and by which complainant was named as executor and bequeathed valuable lands; that in April, 1920, complainant employed an attorney who filed said will for probate; that hearing thereon was set for May 6, 1920; and that defendant filed a contest of the will, which was set for hearing June 14, 1920.

It is further alleged that in the meantime bills in equity had been filed in the circuit court of Lawrence county seeking to set aside and cancel certain deeds executed by Mary H. Sherrod during the last 10 years of her life, on the ground that she was mentally incompetent; that said bills were filed by J. J. Harris, a brother of defendant, but were in reality in behalf of all the heirs of Mary H. Sherrod; and that, excepting complainant, there was a general agreement between the heirs that the cost of the litigation should be apportioned among them; that subsequently the defendant filed a cross-bill in one, if not both, of the suits, seeking the same relief; that the various heirs of Mary H. Sherrod became intensely active in the prosecution of such litigation; and that some of them made alluring suggestions to complainant that if the petition for probate of the will was not prosecuted and Mary H. Sherrod was held by the court to be of unsound mind, it would be to complainant's best interest; and that one Comegys, representing the interest of Susan Comegys (a sister of Mary H. Sherrod), and acting in concert with defendant R. N. Harris, Jr., J. J. Harris, the

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

complainant in said suits in equity, and other heirs of Mary H. Sherrod, approached complainant and undertook to persuade him to cease his activities in the prosecution of said will for probate and to testify in the pending litigation that said Mary H. Sherrod was a person of unsound mind; that complainant stated to said Comegys that he knew the testatrix was not of unsound mind and that he could not and would not so testify, but that he was willing to submit the question to a jury, whereupon complainant released his attorney upon the expectation that the probate of said will would depend upon the verdict of a jury upon the question of her mental capacity to make a will.

It is further alleged that on to wit, July 23, 1920, Lucile Banks and Johnnie Smith, legatees named in the will, intervened as proponents of the will; that the contest was had between said proponents and the defendant, which, after a desperate trial before a jury on or about July 28, 1920, resulted in a mistrial; that complainant was present in court during the contest and that it was not charged by any one that the execution of the will was brought about by any undue influence exerted by complainant upon Mary H. Sherrod.

The bill further alleges that after said mistrial and following continuances the contest was set for hearing for November 29, 1920; that complainant had notice of such hearing, but that two or three days prior thereto he was taken sick at his home several miles in the country distant from the county seat, and was unable to attend the trial: that defendant had often manifested, publicly, and privately, the greatest enmity for complainant, and that, ascertaining that complainant was not in court on the day of the hearing on the contest, defendant, for the purpose of defrauding complainant and for the purpose of bringing about a fraudulent judgment of the court, entered into a collusive agreement with the intervening proponents of the will, whereby defendant agreed to pay and did pay to said Johnnie Smith all or substantially all of the legacy left to him, and agreed to pay and did pay to said Lucile Banks a large part of the legacy left to her, taking unto himself a transfer of the interests of said intervening proponents under said will; that the grounds of contest upon which the trial was had in July were stricken and a new ground of contest was filed wherein it was charged that the execution of said will was brought about by undue influence exerted upon Mary H. Sherrod by complainant, and that a written stipulation was entered into whereby it was agreed that the judgment to be rendered by the probate court should not be used as evidence in the pending proceedings to cancel deeds made by Mary H. Sherrod; that the parties agreed upon and prepared in advance of the hearing on the contest the following judgment of the court:

"R. N. Harris, Sr., Proponent. Miss Lucile Banks and Johnnie Smith, Intervenors. In the Probate Court of Lawrence County, Alabama. Nov. 30, 1920.

"This cause coming on to be heard on this day as provided in the former continuance in this cause, came the parties by their attorneys, and a jury being impaneled to try the issue:

"Thereupon, contestant amends his contest by filing paragraph 6, and withdrawing paragraphs 2, 3, 4, and 5 of the contest as heretofore amended, and issue being joined thereon, comes a jury of good and lawful men, to wit, Jerry Holland and eleven others, who being duly sworn, according to law, do, upon their oaths, say: "We, the jury find the issues in favor of the contestant and that the written instrument alleged to be the last will and testament of the said Mary H. Sherrod, is not the last will and testament of said decedent."

"It is therefore ordered, adjudged, and decreed that the said written instrument offered for probate in this cause as the last will and testament of the said Mary H. Sherrod, of date November 13, 1919, be and the same is hereby denied probate and rejected, and is not admitted to record as the last will and testament of the said Mary H. Sherrod, deceased. It is further ordered, adjudged, and decreed by the court that the costs legally taxable in this cause be and the same are hereby taxed against the estate of the said Mary H. Sherrod, deceased."

It is further averred that the intervening proponents and contestant appeared in court, selected a jury, and introduced one witness in addition to depositions of the subscribing witnesses to the will, who did not undertake to impair the validity of the will otherwise than upon the ground that its execution was induced by the undue influence of complainant, and this, notwithstanding there were many witnesses summoned and present and many depositions on file; that the court instructed the jury to return a verdict for contestant. It is further alleged that during these proceedings complainant was confined to his home by illness, which was known to the parties, and was unable to procure representation at the trial, which is alleged to have been in fact a mock trial; that he had no cause to apprehend that the trial would not be full and fair; that he had no notice that he would be charged with being the producing cause of the execution of said will; and that complainant was confined to his home for four weeks and until long after the second Monday in December, the date of the expiration of said term of court.

The bill further avers that the defendant, in order to defeat complainant of his rights under the will and to cause him to waive his right to overturn the spurious and fraud-infected judgment rendered on said contest, applied for and was appointed administrator of the estate of said Mary H. Sherrod, by the probate court of Lawrence county,

and thereafter, in December, caused complainant to be notified that he (defendant) was willing to resign and have Henry Bynum appointed in his stead, provided complainant would go on Bynum's bond; that in complainant's judgment Bynum was a proper person to administer the estate, and that he signed his bond.

The prayer of the bill is that the judgment of the probate court denying admission of the will of Mary H. Sherrod to probate be cancelled and annulled.

By amendment all the heirs of Mary H. Sherrod are named and made parties respondent.

Callahan & Harris, of Decatur, for appellant.

The jurisdiction of a court of equity to set aside a judgment at law and grant a new trial as for fraud, etc., is original and inherent, and is not affected by the four months' statute, which is a cumulative remedy. 167 Ala. 587, 52 South. 845; 201 Ala. 13, 75 South. 304; 76 Ala. 289. It is immaterial whether complainant was or was not a party to the proceeding on contest; he was injured by the fraudulent decree, and third parties may attack a fraudulent judgment as injurious to them. 129 Ala. 624, 30 South. 34, 87 Am. St. Rep. 81; 94 Ala. 327, 11 South. 353, 16 L. R. A. 564, 33 Am. St. Rep. 122; Black on Judg. 359; 111 U. S. 667, 4 Sup. Ct. 619, 28 L. Ed. 547. When one has gained an unfair advantage in proceedings at law by fraud or misconduct, whereby the court of law will be made an instrument of injustice, equity will interfere to prevent him from reaping the benefit of the advantage thus unfairly obtained. 79 Vt. 449, 65 Atl. 577, 118 Am. St. Rep. 979; 5 R. C. L. 214. Before equity will apply the maxim that "he who comes into equity must come with clean hands," the misconduct of the plaintiff must be so connected with the subject-matter as to affect the equitable relations between the parties arising out of the transaction. 92 Ala. 497, 9 South. 83; 21 C. J. 188.

Kirk & Rather, of Tuscumbia, for appellees.

The complainant, having inaugurated the proceeding to probate the will, and withdrawing on representations that his interest would be best served if his antagonist was successful, cannot be heard to complain that his antagonist changed the ground of contest without notifying him. 149 La. 346, 89 South. 208; 205 Ala. 519, 88 South. 828; 98 U. S. 68, 25 L. Ed. 93; 114 Ala. 551, 21 South. 490, 62 Am. St. Rep. 133. Equity will not annul a judgment because of the use of perjured testimony or forced documents. 194 Ala. 549, 69 South. 948. Complainant having failed to avail of the right to file a motion within 30 days to have the judgment set aside, or to move for a rehearing within four months as provided by section 5372 of the Code, and having consented to the appointment of Bynum as administrator after judgment rendered by the probate court, is estopped and cannot now be heard to complain. 167 Ala. 587, 52 South. 845; 192 Ala. 287, 68 South. 369, Ann. Cas. 1916D, 815. He who comes into equity must come with clean hands. 188 Ala. 640, 65 South. 951. A party who has carelessly omitted to attend to his case, to retain and instruct counsel, to gather his witnesses or otherwise prepare for trial, is in no position to invoke the aid of equity. 127 Ala. 216, 28 South. 666; 67 Ala. 285, 37 Ala. 573.

SAYRE, J. This appeal is from a decree sustaining a demurrer. It is urged as the principal objection to the bill that complainant appears thereby to have lost sight of the maxim, "He who comes into equity must come with clean hands." Construing the bill most strongly against the complainant, the fair inference is, that, as a result of inducements offered by his adversary contesting the will—just what does not appear—he agreed to withhold active effort to sustain the will, wherein he was named as executor and which he had propounded for probate, and promised that he would acquiesce in a decree denying probate on the ground of the mental incompetency of testatrix, contestant to adduce the proof to that end. In pursuance of this understanding, complainant discharged his attorney and left the will to its fate. But legatees caused themselves to be substituted as proponents of the will, and thereupon the question of testatrix's competency became the subject of a contest before a jury which was warmly waged, lasted long, and resulted in a mistrial. Afterwards, the effect of the averment is, in the absence and without the knowledge of complainant while he was remote from the county seat and confined to his bed with sickness, proponent legatees and contestant entered into an agreement by which a decree against the validity of the will on a new ground, viz.: That it had been procured by complainant in the exercise of an undue influence over testatrix, was proffered and foisted upon the probate court by a mock trial. The consideration for this agreement moving to the legatee proponents was that they were to receive and did receive their legacies, notwithstanding the decree against the will, and it appears, inferentially, that the reason for contestant's anxiety to have probate of the will denied was that a suit was pending on the equity side of the docket wherein some of the heirs of Mary H. Sherrod sought to set aside, on the grounds of undue influence, fraud, and the incompetency of the grantor, deeds whereby testatrix had made over to Argie Boles, the widow of her son, large tracts of valuable

lands, and contestant desired to be relieved of the cloud upon his contentions that would be created by a decree admitting the will to probate.

[1] The maxim that, "he who comes into equity must come with clean hands," is of venerable age and wide application. The rule is thus stated in 1 Pom. Eq. Jur. § 404:

"It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose very foundation is good conscience." McCord v. Bridges, 205 Ala. 692, 89 South. 39.

But the maxim has its limitations.

"It does not repel all sinners from courts of equity, nor does it apply to every unconscientious act or inequitable conduct on the part of the complainant." 10 R. C. L. p. 391, § 140.

The maxim invoked against complainant is one of a number of cognate maxims frequently acted upon by courts of equity, among them, in pari delicto, etc. (21 C. J. 182), the effect of which is thus well stated in Clemens v. Clemens, 28 Wis. 637, 652, 9 Am. Rep. 520, 530:

"Though engaged in an illegal transaction"—hardly so much can be said against the conduct of complainant in this case—"and unable to assert or maintain any rights or remedies founded on the unlawful thing done or intended to be, still the plaintiff forfeited no right or privilege beyond that, or with respect to any other matter or thing not within the purpose of the wrongful act, and not effected by the corrupt intent, or caused or produced in consequence of it. To the extent of his intended wrong he might be without remedy, but in all other respects his rights and remedies are the same as if no such wrong had been done or intended. This is and should be the true measure and extent of all just punishment. Though guilty of a wrong or transgression of the law in one particular, a party does not become an outlaw, or forfeit his right to legal protection in all others, nor lay himself open to the frauds and machinations of others to be practiced and perpetrated against him with impunity."

The maxim affects the equitable relations between the parties with respect to the subject-matter of the litigation. Foster v. Winchester, 92 Ala. 497, 9 South. 83; 21 C. J. 188, § 174.

[2] In the case here complainant was named in the will as devisee of an half interest in a valuable plantation. On the averments of his bill it may be inferred against him that the inducement held out to him in order to procure his abandonment of all active support of the will was that, if the grants to Argie Boles could be reclaimed, his interest as heir at law would outweigh the interest he would lose as devisee. Complainant's averment is that "he was willing to submit the question [of testatrix's insanity] to the verdict of a jury and abide its decision," and so informed defendant and those who were interested in defeating the probate of the will. True, after the will had been defeated, and defendant had been appointed administrator of the estate of Mary H. Sherrod, it was agreed between complainant and defendant that defendant should resign, that one Bynum should be appointed in his place, and that complainant would sign the latter's bond as administrator, all which was accordingly done; but we do not see that this conduct on his part added to the demerit of his original agreement, for his averment is that at the time he was ignorant of the fact—and in this connection evidential facts are averred—that the ground of contest had been changed and a fraudulent decree foisted upon the probate court. It may be conceded that the facts averred, construed most strongly against complainant, as they must be, notwithstanding his protestations of honest purpose, disclose a sordid motive or even that degree of moral reprehensibility that would ordinarily deny him access to the court of conscience, though probably the court, if the question were between complainant and defendant alone, measuring their comparative guilt would extend relief to complainant as to a party comparatively innocent. Phillips v. Bradford, 147 Ala. 346, 41 South. 657.

But not complainant and defendant alone were affected by complainant's agreement to abandon the will or the fraudulent decree thereby made possible. Morally, if not otherwise, the case of Argie Boles was involved, and, a matter of vastly more importance, the integrity of the probate decree. Complainant by his bill proposes now to repudiate defendant's execution of the agreement which went far beyond the agreement itself, to assume his trust where he laid it down, and to have the court set aside a decree procured by a fraud upon the law. To deny relief in these circumstances would allow the maxim to work injustice and wrong (21 C. J. 187, § 172)—to the extent, at least, the execution of the agreement exceeded the purpose of complainant—and give countenance to the morally reprehensible arrangement between defendant and the proponent legatees would result in still greater offense to morals, good conscience, and public policy. Hobbs v. Boatright, 195 Mo. 693, 93 S. W. 934, 5 L. R. A. (N. S.) 906; Saylor v. Crooker, 97 Kan. 624, 156 Pac. 737, Ann. Cas. 1918D, 473; 21 C. J. 189, § 175. We are of opinion therefore that the ground of objection which seems to have been held fatal to the bill in the trial court was not well taken.

As for the force and effect of the probate decree, if rendered in the circumstances averred in the bill, we need only refer to the opinion of this court in Alabama National Bank v. Mary Lee Coal Co., 108 Ala. 297, 19

South. 404, whence it will appear that the decree is to be taken as the act of the parties thereto, and not as the judgment of the court, because rendered upon a collusive and fraudulent presentation of the case. But on its face the sentence against the will is a sentence against all claiming under it. 2 Black on Judgments, § 637. The agreement for a decree, in the circumstances averred, was a fraud upon complainant, upon Argie Boles, upon the estate of deceased, upon the law, and, because clothed in the form of solemn judgment, should be vacated by a new decree. Complainant is entitled to be heard against the probate decree, even though it be considered that after his abandonment of the proceeding to probate the will he was no longer a formal party, for, as already stated, the will contained a devise to him of a valuable estate. First National Bank v. Pullen, 129 Ala. 638, 29 South. 685.

Other objections to the bill are mooted in the brief, but some of them are so closely related to the proposition already considered as to require no further statement.

[3] The demurrer seeks to estop complainant on the ground that he agreed to the appointment of Bynum as administrator, a matter to which we have heretofore referred; but this objection to the bill is met and answered by the averment—general it is true, but not objected to on that account—that complainant was "in ignorance of the facts connected with the trial of said contest and the appointment of the defendant as administrator." Knowledge is an essential of estoppel.

[4] Appellant appears to have misconceived the meaning of Evans v. Wilhite, 167 Ala. 587, 52 South. 845. The probate decree against the will was rendered November 30, 1920. The bill in this cause was filed January 25, 1921. On these facts it is contended that complainant could not maintain his bill for the reason that, being advised of the wrong averred, he failed to avail himself of his remedy under the four months' statute, section 5372 of the Code. But, as was held in the case referred to, the remedy provided by the four months' statute is cumulative and concurrent, not exclusive of the equity jurisdiction. Ingram v. Ala. Power Co., 201 Ala. 13, 75 South. 304; Dickey v. Vann, 81 Ala. 425, 8 South. 195. We may add that the record does not show that complainant neglected any remedy he may have had at the common law by motion during the term at which the decree was rendered. Carlisle v. May, 75 Ala. 502.

The demurrer to the bill should have been overruled.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.