(99 South. 913)

**HARRIS v. HARRIS et al.    (8 Div. 606.)**

(Supreme Court of Alabama.    April 17, 1924.)

**1. Wills ⬿355—Executor abandoning effort to probate will held not entitled to complain of decree denying probate.**

Executor and devisee, agreeing to abandon effort to probate will and consenting to suit to set aside testatrix's deed to another for mental incapacity, as to which he was as well advised as other members of family, who followed his advice in matter, and inducing nephew to allow suit to be conducted in latter's name, *held* not entitled to complain of decree denying probate as product of fraud and collusion.

**2. Compromise and settlement ⬿3—Compromise of will case favored where further litigation would cost more than required to settle legacies.**

Where further litigation of will case, after mistrial, would cost more than enough to settle legacies involved, law favors compromise, which courts may encourage by all legal means.

**3. Wills ⬿340—Form of decree entered on compromise of will case may be matter of compromise.**

Form of judgment or decree on compromise of will case may be matter of agreement and compromise between parties sui generis properly represented.

**4. Wills ⬿340 — Compromise judgment may take form of judgment by jury and verdict against will where form cannot be agreed on.**

Where form of judgment, on compromise of will case, cannot be agreed on because of absence of interested parties, it may take usual form of judgment by jury and verdict against will.

**5. Appeal and error ⬿108—Affirmative charge reviewable if not warranted by proof offered by agreement of parties.**

If summary proof of undue influence, offered by agreement of parties to will case, does not warrant affirmative instruction to find

---

⬿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

against will, such instruction is reviewable on appeal by aggrieved party.

**6. Compromise and settlement ☞16(1)—Disposition of costs held properly part of compromise agreement in will case.**

Disposition of costs of suit *held* properly part of compromise agreement by parties to will case.

**7. Wills ☞405—Costs may be taxed against decedent's estate on failure of will contest because of compromise.**

Will contest having failed because of compromise by parties, it was within court's discretion to tax costs against decedent's estate, under Code 1907, § 6203.

**8. Evidence ☞332(2)—Interrogatories never answered held not evidence of will contestant's purpose in conduct of case after mistrial.**

In will proponent's suit to annul for fraud and collusion, decree denying probate contestant's interrogatories to proponent, *held* not evidence of contestant's purposes in conduct of case, where, by agreement, they were never answered.

**9. Wills ☞320—Shifting issue on final hearing of will contest to charge undue influence by proponent, without notice to him, held improper.**

Shifting issue, on final hearing of will contest, to that of undue influence by proponent, who was absent because of illness, without notice to him, *held* improper, though he had acquiesced in contest on other grounds, and contestant had not waived right to thus attack will.

**10. Wills ☞355—Proponent held precluded from insisting on probate.**

Proponent, on faith of whose promise not to claim property devised to him his sister and other members of testatrix's family co-operated with him in litigation to set aside deed from testatrix, after abandonment of effort to probate will, *held* not entitled to insist on probate, though decree denying probate was obtained by fraud.

**11. Wills ☞355—Appointment of contestant as administrator after decree denying probate held not ground for annulment.**

That will contestant had himself appointed administrator after decree denying probate *held* not ground for annulment for fraud at suit of executor, who acquiesced in contest; complainant having waived preference in appointment by agreement to appointment of another to whom contestant voluntarily turned over administration.

**12. Wills ☞355—Proponent acquiescing in contest held not entitled to annulment of decree denying probate to protect interest of legatee.**

Proponent acquiescing in contest *held* not entitled to annulment of decree denying probate to protect interest of legatee asserting no claim to legacy, and testifying to matters tending strongly to impeach will for want of testamentary capacity.

**13. Wills ☞355—Decree denying probate held not fraudulent.**

Compromise decree denying probate on ground of undue influence by nominal proponent *held* not fraudulent.

Appeal from Circuit Court, Lawrence County; James E. Horton, Jr., Judge.

Bill in equity by R. N. Harris, Sr., against R. N. Harris, Jr., and others. From a decree denying relief, complainant appeals. Affirmed.

Callahan & Harris, of Decatur, for appellant.

Counsel argue for error in the decree, and cite Harris v. Harris, 208 Ala. 20, 93 South. 841; Ala. Nat. Bank v. Mary Lee Coal Co., 108 Ala. 297, 19 South. 404; Scoville v. Brock, 79 Vt. 449, 65 Atl. 577, 118 Am. St. Rep. 979; 5 R. C. L. 214; Code 1907, § 5429; Blake v. Harlan, 75 Ala. 206; Carlisle v. May, 75 Ala. 502.

Kirk & Rather, of Tuscumbia, for appellees.

Counsel discuss the questions raised, but without citation of authorities.

BOULDIN, J. The bill was filed by R. N. Harris, Sr., to annul and vacate for fraud a decree of the probate court denying the probate of the will of Mary H. Sherrod, deceased. The case was before us on appeal from decree on demurrer to the bill. The substance of the bill appears in the report of the case. Harris v. Harris, 208 Ala. 20, 93 South. 841. We sustained the equity of the bill. Answers were filed by the defendants, heirs at law, denying the several averments on which the right to relief depends. The present appeal is from a final decree on pleadings and proof dismissing the bill.

This brings under review the facts of the case. The record is voluminous, and we seek to set forth only such findings or conclusions of fact as lead to the proper conclusion on the whole case.

Mary H. Sherrod left surviving, as her heirs at law, one brother, R. N. Harris, Sr., two sisters, Mrs. Lucy Brewer and Mrs. Susan Comegys, two nieces, daughters of Ida Allison, a deceased sister, and eight nephews and nieces, children of A. J. Harris, a deceased brother. Mary H. Sherrod left an instrument in writing, duly signed and witnessed, purporting to be her will. The devises and bequests under the will were: To her brother, R. N. Harris, Sr., her one-half interest in a plantation known as the "Lile Place," owned jointly with the decedent; to Miss Lucile Banks, $5,000; to Miss Mary Gibson, $300; to Johnie Smith, colored, $300; and the residue of the estate to all her heirs, share and share alike, under the laws of descent and distribution. R. N.

Harris, Sr., was named as executor. He employed counsel and proceeded to propound the will for probate in the probate court of Lawrence county.

R. N. Harris, Jr., a nephew, filed a contest on the grounds of mental incapacity and undue influence. The persons charged with undue influence were not then named. Pending the contest R. N. Harris, Sr., was appointed special administrator. Several members of the family became actively interested. The validity of the will and also deeds of conveyance made theretofore, among them a deed to Mrs. Argie Bowles involving a valuable tract of land, were all brought in question.

Mrs. Lucy Brewer resided in New Orleans. A correspondence between her son, Joseph Brewer, and R. N. Harris, Sr., ensued. Mrs. Brewer thus expressed a purpose to be guided by her brother. Mrs. Susan Comegys, residing at Knoxville, Tenn., came to see him. On May 13th he, with George and Ed Comegys, her sons, in conference with counsel in Decatur, decided the effort to probate the will should be abandoned and action be taken to set aside the deed of Argie Bowles. This suit was brought in the name of James F. Harris, a nephew. On the same date R. N. Harris, Sr., wrote Joe Brewer:

"We decided to have deed set aside, and to take steps to have deed to four hundred acres of land given by Sister Mary to Mrs. Bowles set aside."

On May 24th he addressed a letter to each of the heirs and legatees as follows:

"The alleged last will of my sister Mary H. Sherrod, was songiedn ber [consigned per] her direction to my custody. The duties of the trust thus reposed and the law of Alabama, required me to surrender the same to the probate court of Lawrence county, Alabama, after her death, which I did. Although I was a large beneficiary under said alleged will I am constrained to drop these proceedings and you may take such action in the premises as you may be advised. You doubtless are aware of my reasons or some of them. Suffice it to say that I have no ulterior motive whatever, and contemplate no side line or side issue. It is not my present intention to dismiss the proceedings, so you should be alert to protect whatever interest you may consider that you have in the premises by employment of lawyers of your own selection, as my lawyer will offer no evidence whatever in support of said alleged will. The hearing is at Moulton, Alabama, June 14th, 1920. You are named as one of the beneficiaries. If you care to hear my reasons in detail for the above attitude, you may be enlightened by my testimony, if the court will admit it on the trial of the contest by my nephew, R. N. Harris, which is still pending, and which will be heard on the above date."

In a letter to Joe Brewer, May 28, 1920, he again wrote:

" * * * I believe at the time she made her last will she was not compitent [competent] as proof of it her leaving Miss Banks a legacy of $5,000.00 One who had no blood ties and a lady of 35 or 40 years of age who had never visited my sister ½ doz. times in her life and two of those visits within a few months of my Sister death but for this proof of incompitancy [incompetency] I would certainly have defended the will. * * * "

Meantime an agreement was drawn in New Orleans to be executed between R. N. Harris, Sr., and Thomas Harris, a nephew, as follows:

"That whereas, both parties hereto are of the opinion that certain deeds given by Mrs. Mary Harris Sherrod during her lifetime to various persons whereby Mrs. Mary Harris Sherrod conveyed, alienated and transferred certain lands and property to third persons and among others a certain store building and lot or parcel of ground in the town of Courtland, state of Alabama, to Thomas Harris and certain deeds to Mrs. Argie Cortner Boles should be set aside and avoided because of the mental and physical condition of Mrs. Mary Harris Sherrod for many years prior to her death;

"And whereas, both parties hereto are of the opinion that a certain last will and testament made or purported to have been made by Mrs. Mary Harris Sherrod should be refused probate and declared null and void because of the mental and physical condition of said Mrs. Mary Sherrod at the time of the making of said will and long prior thereto;

"It is hereby agreed and stipulated that Thomas Harris agrees and binds himself to deed back or transfer to the estate of Mrs. Mary Harris Sherrod the said store building and lot or parcel of ground in the town of Courtland, state of Alabama, for and in consideration of the said Mr. Richard N. Harris, Sr., declining and refusing to accept any legacy or legacies of any kind or nature whatsoever left or purported to have been left to him in said will and for and in consideration of the said Mr. Richard N. Harris, Sr., filing suit either individually or jointly with the other heirs or heir of the late Mrs. Mary Harris Sherrod to set aside said last will and testament and cause said last will and testament to be refused probate.

"It is further agreed and stipulated that for and in consideration of the foregoing agreement on the part of Thomas Harris that Mr. Richard N. Harris agrees to join in an action in law or equity to set aside the alleged last will and testament of his sister, Mrs. Mary Harris Sherrod, and to set aside any deeds, transfer or conveyances of property of any kind or nature by such action or actions as may be necessary in law or in equity any acts or [of] any nature or kind whatsoever whereby the said Mrs. Mary Harris Sherrod or the late Harris Sherrod conveyed, transferred or delivered any property, rights, interests or reversions or remainders to third person and that both parties hereto agree that all of the property belonging or formerly belonging to the said Mrs. Mary Harris Sherrod or the late Harris Sherrod should be restored to the estate of Mrs. Mary Harris Sherrod and said estate settled in pursuance to law and equity as in the case of an intestate succession."

R. N. Harris, Sr., added the following:

"In event the will is not probated the above agreement is to be effective."

Thus modified, it was fully executed and forwarded to Joseph Brewer with letter of July 9th. This added clause, construed in connection with the agreement as a whole, refers to the property rights of the parties to be affected thereby, and not to the presently operative provisions touching their attitude toward the will contest and suit against Argie Bowles.

Meantime Lucile Banks and Johnie Smith had intervened as legatees, and taken up the fight to probate the will.

The trial came on July 28th, lasted 10 days, and resulted in a mistrial. The issues on this trial were mental incapacity and undue influence and fraud on the part of Lucile Banks. R. N. Harris, Sr., true to his notice to the heirs, caused his attorney to take no part in further proceedings to probate the will, was present at the trial, and not examined as a witness. Being the executor named in the will, and a large beneficiary therein, the moral weight of his influence on that trial was with the contestant. The cause came on for second trial November 29, 1920. The immediate parties to the contest were present with counsel and witnesses. R. N. Harris, Sr., was sick and unable to attend. He so notified the trial judge by telephone, but asked no continuance of the cause, gave no notice of any wish to aid in the probate of the will, made no preparation for trial, and did not direct his attorney to be present. Our conclusion is he was abiding his former notices and agreement not to support the will, and all parties were authorized to assume he had no opposition to a decree against the will. He had ceased to be a litigating party.

The trial was begun, a jury organized, and hearing of objections to depositions was in progress, when negotiations for a compromise began. It appears the offer of compromise came first from counsel for Lucile Banks and Johnie Smith, intervening proponents. The trial judge was advised of compromise pending, and adjourned court a day to give opportunity to communicate with nonresident heirs. A compromise was agreed upon, Lucile Banks to receive $3,000 and Johnie Smith $300. Mrs. Brewer, in New Orleans, on communications by telephone, agreed to pay and did pay $1,100 on the compromise. Payments being arranged, the legacies of proponents were assigned to R. N. Harris, Jr., the contestant.

Pending the compromise attorneys discussed the procedure to dispose of the cause in keeping with the compromise. A judgment by jury and verdict against the will was prepared. One of the attorneys for proponents also represented Argie Bowles in her suit. He objected to a record showing the will set aside for want of testamentary capacity, and obtained an agreement that the decree against the will should not be evidence in her case. The former grounds of contest were stricken, and one filed alleging the will was the result of undue influence of R. N. Harris, Sr., and Lucile Banks, and each of them. Thereupon proof was made of the execution of the will, and the contestant offered evidence of a witness tending to support the charge of undue influence on the part of R. N. Harris, Sr. Contestant asked and the court gave the affirmative charge in writing, the jury returned a verdict accordingly, and the decree was entered as set out on former appeal.

[1] We find no ground of complaint at the fate of the will. This complainant was quite as well advised as any member of the family touching his sister's condition and her affairs. He was regarded by his sister at least as the natural head of the family. We see no evidence that he was overreached in taking up the fight against Argie Bowles at the sacrifice of the will. He was one of the leading and controlling actors, and induced Jas. F. Harris to allow the suit conducted in his name. We see no reason to say he was controlled in that regard by a sordid desire to gain more by an attack on the Bowles conveyance than through the will. In reaching our conclusions in this cause we proceed on the hypothesis that he was advised there was good cause to bring the whole estate back into the family and all share alike. But he did make the election between the two. Other members of the family followed him and his advice, incurring the burdens of such litigation.

[2-5] There is no cause for complaint that the will case was compromised. A protracted and expensive litigation was in progress. Complainant's attorney had informed Mrs. Brewer after the mistrial that it might be expected to continue three to five years. R. N. Harris, Jr., on the one hand, and the intervening proponents, on the other, were now facing the greater hazard. Another trial or two would cost more than it would take to settle the legacies involved. In such condition the law favors compromise, and the courts may by all legal means encourage the same. The form of judgment or decree to be entered may itself be matter of agreement and compromise between parties sui generis properly represented. Where a form of judgment, because of absence of interested parties, cannot be agreed upon, it is proper for it to take the usual form—a jury and verdict, in a will case. In the present case no issue is raised that the court had jurisdiction to allow summary proof and direct the verdict. If the proof did not warrant the instruction given, it was subject to review on appeal by an aggrieved party.

[6, 7] The disposition of the costs of suit is properly a part of the compromise agree-

ment. The contest not having failed, it was within the discretion of the court to tax the costs against the estate of the decedent. Code 1907, § 6203.

Coming now to consider the special charges of fraud and collusion here involved, we think the record supports the contention that in the interview between complainant and Ed Comegys it was understood that complainant, as proponent, should keep silent and let proof be made of the mental incapacity of testatrix. We do not find that R. N. Harris, Jr., was in any way a party to that agreement, nor any agreement denying him a free hand in making a contest of the will. Both parties frankly avow that R. N. Harris, Jr., was unfriendly towards his uncle. It appears R. N. Harris, Jr., advised James Harris not to accede to the request to bring the Argie Bowles suit in his name. R. N. Harris, Jr., declined to so litigate, and appeared by cross-bill of his own seeking the same relief. He was fighting the will case in his own name, was antagonistic to the devise made his uncle, and, so far as this record discloses, reserved the right to contest the will on any and every ground. The letter of May 24th sent to the heirs by complainant gave no notice of any condition to his leaving the will to its fate. On the contrary, it declared he would offer no proof. This would leave the contestant to defeat the will as he would unless some one other than himself took up the fight for the will.

[8] It appears that after the mistrial R. N. Harris, Jr., filed interrogatories to R. N. Harris, Sr., for discovery under the statute. Some of these interrogatories related to an issue of undue influence on the part of R. N. Harris, Sr. By agreement they were never answered, and cannot be taken as evidence one way or the other touching the purposes of R. N. Harris, Jr., in the further conduct of the case.

[9, 10] A question of decided interest is presented as to whether a fraud was perpetrated in shifting the issue on final hearing so as to charge undue influence on R. N. Harris, Sr., even without an agreement, under the circumstances. The point is made that no such issue was raised on the first trial. The inference may be drawn that this was for strategic reasons. Contestant could hardly have expected the moral support of R. N. Haris, Sr., on that trial if his honor had been assailed. At the last trial contestant was advised that he was absent and unwell. No notice of the new ground of contest was given to him. While the contestant had waived no right to thus attack the will, we do not approve a turn in the case involving one's character without notice or opportunity to be heard. A man's personal as well as property rights should be respected in a lawsuit. If this were an ordinary case, not involving other and innocent parties, we would hesitate to refuse relief, notwithstanding the position of complainant in the cause.

As above stated, complainant is in no position to insist upon the probate of this will. His sister Lucy, who stood by him and furnished money to help end the litigation, had no notice of the new issue injected. To open up this litigation now, with all its incidents of costs and delays, would work an injustice to all those members of the family who have co-operated in the Bowles litigation on the faith that R. N. Harris, Sr., would not claim the Lile place under the will.

[11] One wrong cannot be redressed by another wrong. It cannot be a ground of relief that R. N. Harris, Jr., had himself appointed administrator after the will was broken. This was a separate proceeding for which complainant had a separate remedy if he had a preferential right to the appointment. This, he waived when he agreed to have Mr. Bynum appointed and R. N. Harris, Jr., voluntarily turned over the administration to him.

[12] There are no other beneficial interests under the will which complainant now has a duty to protect. The two insisting upon the will have been satisfied. Miss Mary Gibson has never asserted any claim to her legacy under the will. She becomes a witness for respondents in this cause, and her testimony tends strongly to impeach the will for want of testamentary capacity.

[13] We must conclude the case made by the bill is not sustained by the evidence. The decree was not a fraud on the court, who knew and approved the compromise proceedings. It was not a fraud on Argie Bowles. Her own attorney saw to that.

The complainant cannot take up his trust where he laid it down. New events and rights have intervened since he laid it down, which the relief here sought would unjustly ignore.

The decree of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and MILLER, JJ., concur.