ALMON, Justice.
This appeal is from a judgment denying specific performance and awarding damages for breach of a contract to convey realty.
Neil Thomason and his wife, Mary, owned a house and lot in McCalla, Alabama. In 1979 they listed their house for sale with Johnson-Rast & Hays. Madge Campbell, an employee of Johnson-Rast & Hays, was designated as the listing agent for the Thoma-son home. During the summer of 1979, another Johnson-Rast & Hays agent, Mrs. Jerry Jones, secured from James Wilson a contract to purchase the Thomason house for $55,000, which she presented to the seller’s agent, Madge Campbell. The Thoma-sons counteroffered for $56,000. Wilson ac *872 cepted this offer and set a closing date of August 30, 1979. After Wilson paid his earnest money, but before the closing date, the Thomasons’ attorney notified Mrs. Jones that the Thomasons would not close the sale. Wilson filed suit against the Thomasons on October 16, 1979, seeking specific performance of the contract and, in the alternative, damages for breach of contract. In addition to the complaint, Wilson filed a lis pendens notice notifying all prospective purchasers of the pending suit. Thomason later sold the home to the Sawyers in November of 1979.
During trial, Wilson testified that although his birth name was Larry Wright, he also used the name James Wilson, and that he had previously purchased property under both names. Wilson conceded that he was a member of the Devil’s Disciples motorcycle club, and that he had been involved in several altercations, but denied that he concealed his identity by representing himself to be James Wilson or that he intended to use the house as a clubhouse for the Devil’s Disciples. Wilson also denies any fraudulent intent by the use of the name James Wilson.
Mrs. Thomason testified that she would not have signed the contract of sale if she had known Wilson’s true identity and his affiliation with the Devil’s Disciples.
A property appraiser, testified that the appraised value of the Thomason home was $70,000.00. William Sawyer, who owned the house at the time of trial, testified that its market value was $55,000.00. The trial court, sitting without a jury, denied Wilson’s prayer for specific performance, found that the Thomasons had breached the contract, and awarded $2,532.00 in damages. Wilson appeals.
There are two reasons why the court could have denied specific performance. First, the Sawyers, who had previously purchased the house and lot, were not made parties to the suit. Rule 19, ARCP. This Court held in Johnson v. White-Spunner, 342 So.2d 754 (Ala.1977) that:
... In an action where the final decree affects title, ownership, or interest in real property each possessor of title, ownership or interest must be made a party to the action. Davis v. Burnette, 341 So.2d 118 (Ala.1976); Dews v. Peterson, 283 Ala. 650, 219 So.2d 903 (1969); Snodgrass v. Snodgrass, 212 Ala. 74, 101 So. 837 (1924) .... [Emphasis added.]
Second, the plaintiff, whose true name is Larry Donald Wright, signed the contract of sale as James Wilson. The plaintiff owned other property, both as Larry Wright and as James Wilson. While it has been said that a person may adopt what name he pleases if no harm has been done, Milbra v. Sloss-S.S. & I. Co., 182 Ala. 622, 62 So. 176 (1913), nevertheless he may not do so for a fraudulent purpose. Alabama Clay Products Co. v. Mathews, 220 Ala. 549, 126 So. 869 (1930). A person will not be allowed to adopt two names and use one or the other at will for nefarious reasons. There was sufficient evidence for the trial court to have concluded that the plaintiff used the name James Wilson to avoid a possibly tainted reputation which had become attached to the name of Larry Wright. The remedy of specific performance is equitable in nature and he who seeks equity must do equity. This principle was ably stated in McCord v. Bridges, 205 Ala. 692, 89 So. 39 (1921), to the effect that:
“A contract may be perfectly binding at law; it may be of a class which brings it within the equitable jurisdiction, because the legal remedy is inadequate; but, if the plaintiff’s conduct in obtaining it, or in acting under it, has been uncon-scientious, inequitable, or characterized by bad faith, a court of equity will refuse him the remedy of specific performance.” 1 Pom.Eq.Jur. § 400.
And thus in conclusion of the whole subject:
“It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscien-tious conduct, connected with the controversy to which he is a party, will repel him from the forum whose very foundation is good conscience.” Section 404.
*873 The last contention of error deals with the award of damages to the plaintiff for breach of contract in the amount of $2,532.00. The plaintiff argues there is no evidence to support this amount. An expert testified that the fair market value of the house and lot was $70,000.00. Sawyer, who owned the house at the time of trial, testified that the fair market value of the house and lot was $55,000.00. The contract sales price was approximately $56,000.00. The evidence would therefore support a finding of damages to range from zero to $14,000.00. The court’s finding was within the range and will not be disturbed. Counsel for both the appellant and the appellee state that they cannot by computation arrive at the same figure as the trial court. We will concede that we cannot either. But the burden is on the appellant to show error, and we cannot conclude that he has done so. The appellant merely argues that the court was bound by the expert testimony of $70,000.00. As we have previously stated, there was other evidence before the court on the value of the property.
AFFIRMED.
TORBERT, C. J., and FAULKNER, EM-BRY and ADAMS, JJ., concur.